# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KEVIN McCAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:08-CV-1978-VEH** |
| | ) | |
| **DRUMMOND COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Kevin McCay ("McCay") initiated this lawsuit against his former employer, Defendant Drummond Company, Inc. ("Drummond") on September 29, 2008, in the Circuit Court of Etowah County, Alabama. (Doc. 1 at Ex. 1). On October 24, 2008, Drummond removed the case to this court on the basis that McCay's claims against it arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), and more specifically under 29 U.S.C. § 1132(a)(1)(B), which provides that ERISA supplies the exclusive remedy for claims brought by employee benefit plan participants. (Doc. 1 ¶¶ 6, 8). In his complaint, McCay challenges Drummond's denial of his application for a disability retirement pension, alleging that he subsequently received a favorable award of Social Security benefits, and that

Drummond was under a continuing duty to consider this new evidence of disability. (Doc. 1, Ex. 1, Compl. ¶¶ 1-9).

Shortly after removing the case to federal court, Drummond filed a Motion to Dismiss (Doc. 2), which the court denied without prejudice because the motion relied upon documents outside the pleadings that were not otherwise appropriately before the court. (Doc. 12). McCay then filed a Motion to Remand to the Plan Administrator. (Doc. 8). Pursuant to its discretion, the court granted the motion so that McCay could present to the Pension Committee additional evidence in support of his disability claim; accordingly, the case was remanded on March 2, 2009. (Docs. 16, 17). Upon remand, Drummond upheld its previous denial, and McCay then filed a Motion to Reinstate Claim. (Doc. 20). The court granted the motion and reopened this case on August 16, 2010. (Docs. 25, 26).

Now before the court are the following cross-motions for judgment on the merits: McCay's Motion for Judgment on Liability With Submissions (Doc. 35) (the "Motion for Judgment on Liability"), and Drummond's Motion for Summary Judgment (Doc. 25) (the "Motion for Summary Judgment"). The parties have fully briefed these motions, and they are now under submission. For the reasons explained below, the court concludes that Drummond's Motion for Summary Judgment is due to be granted and McCay's Motion for Judgment on Liability is due to be denied.

## II.    BACKGROUND[1]

### A.    Employment Background and Medical History

McCay is a former Drummond employee who worked nearly 20 years for the company until his termination on December 15, 2004. (A.R. 0004; Doc. 41 at 2).[2] His position as a troubleshooter for the coke byproducts plant required him to work with heavy machinery and entailed heavy lifting, up to 100 or more pounds per day, as well as walking, standing, climbing, kneeling, and crouching. (A.R. 0033).

McCay's medical history reveals that he generally suffers from back, hip, and leg pains. In November 2002,[3] McCay developed severe back pain, which continued down into his leg and foot.  (A.R. 0033). An MRI taken of his lumbar spine in

---

[1]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following underlying facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of the relevant facts pertaining to this particular case or controversy.

[2]  Hereinafter, the court's citations to documents in the Administrative Record will be made by reference to "A.R. [Bates No.]"; these documents are located in this court's record at Doc. 39, Tab 1 (Defendant's evidentiary material filed under seal).

[3]  Although McCay indicates that he suffered some knee pain since 1978 (*see* A.R. 0033), his application for pension disability benefits indicated an onset of his symptoms beginning in November 2002. Therefore, the court's consideration of McCay's *relevant* medical history, for the purposes of determining his eligibility for those pension benefits, begins with his condition and treatment as of November 2002.

October 2002 revealed a protruding disc and annular tear at L5-S1 and a bulging disk at L4-5. (A.R. 0023). For his back pain, McCay was treated with several epidural steroid injections that provided limited relief. (A.R. 0023). A second MRI in January 2004 did not reveal significant changes to the condition of his spine. (A.R. 0023). On June 8, 2004, McCay complained to his treating physician, Dr. Bradley Goodman, of worsening pain in his right buttox and lower right extremity. Another MRI revealed "a significant L4-5 right paracentral fragment and significant effacing of the thecal sac and right descending L5 nerve." (A.R. 0023). Rather than immediately opting for surgery, McCay elected to try another epidural block.

Independently, an arm accident on June 14, 2004 caused his left elbow tendon to rupture, requiring surgery. On June 23, 2004, McCay underwent surgery to repair both his left tendon and the herniated disc in his lumbar spine at L4-5. (A.R. 0023). First, Dr. Timothy A. Cool[4] performed the repair of his left biceps tendon, followed by Dr. Matthew Berchuck, who conducted the laminectomy diskectomy procedure. (A.R. 0058).

On June 15, 2004, one day after the arm accident, McCay came out of work.

---

[4] The court notes that throughout the administrative record and the briefing by the parties, reference is made interchangeably to Dr. Timothy A. Cool and to Dr. Timothy A. McCool. The court presumes that the references to "Dr. McCool" are mistaken references to "Dr. Cool," because in context, these references consistently refer to the same doctor who performed the tendon repair surgery.

He drew six months of short-term disability benefits, until his employment was terminated on December 15, 2004.

Subsequent to his termination, McCay continued to experience back pain and was referred to Dr. Goodman for further treatment with epidural blocks, as well as to Dr. Matthew Berke and Dr. Wayne Gossman of the Birmingham Pain Center. Additionally, in November 2005, approximately one year after the termination of his employment with Drummond, McCay underwent a right knee replacement surgery, also performed by Dr. Cool. (A.R. 0024).

### B.     The Drummond Pension Agreement

As an employee, McCay was eligible to apply for disability benefits under the Drummond Company, Inc. United Steelworkers of America and Local 12136 Second Revised Pension Agreement, as amended (the "Pension Agreement" or the "Plan").[5] (Doc. 1-2, Ellis Decl. ¶ 4).[6]  The Pension Agreement provides for disability benefits in the form of a disability retirement pension for employees who have provided at least 10 years of service and have "become through some unavoidable cause <u>totally and permanently disabled</u>" as defined under the Pension Agreement. (Doc. 1-3 at 14)

---

[5]  A complete copy of the Pension Agreement is attached as Exhibit A to the Ellis Declaration submitted as Exhibit 2 to Doc. 1, the Defendant's Removal Notice.  Hereinafter, the court will cite to the Pension Agreement at "Doc. 1-3 at [page number]."

[6]  Drummond and the United Steelworkers of America and its Local 12136 (the "union") negotiated the language and terms of the Pension Agreement.

(emphasis added). Specifically, the Pension Agreement provides, in relevant part:

> An Employee shall be deemed to be totally and permanently disabled, as the term is used herein, and shall be retired <u>if he has been totally disabled by bodily injury or disease to such an extent as to render it impossible to engage in or to follow a substantially gainful occupation</u>, and after a total disability shall have continued for a period of six (6) consecutive months, and if in the opinion of the Pension Committee based on the findings of a qualified physician or physicians such employee is presumed to be permanently and totally disabled. . . . Such pension for permanent disability shall continue only so long as such pensioner shall be totally and permanently disabled.

(*Id.*) (emphasis added).

The Pension Agreement vests discretion in the Pension Committee to make disability determinations: "Such disability and the continuance and permanency thereof and such other qualification shall be determined by the Pension Committee and such determinations of the Pension Committee shall be controlling." (Doc. 1-3 at 14-15).

## C.    Denial of McCay's Pension Application

On November 15, 2004, McCay filed a disability pension application under the Pension Agreement. McCay alleged that his disability onset date was November 2002, and that he was disabled as a result of "severe back pain [that] continued down my leg, and into my foot. Accident w/ arm in June, 2004. Knee pain since 1978." (A.R. 0033). The Pension Committee processed McCay's application, and McCay was provided the

6

opportunity to submit any and all medical information and to identify physicians who could provide information regarding the nature and severity of his alleged disabling condition. (A.R. 0034, 0072). McCay submitted information from the treating physicians who performed his June 2004 surgery procedures, Dr. Berchuck and Dr. Cool. (A.R. 0039-0071). Dr. Berchuck answered the question "Explain [McCay's] specific restrictions and limitations" as follows: "None. May return to full duty [November 24, 2004] from spine standpoint." (A.R. 0040). Evaluating the extent of McCay's disability, Dr. Berchuck opined that he was not "totally disabled" for either "any occupation" or for "his regular occupation." (A.R. 0041).

Likewise, Dr. Cool advised of a 30-pound lifting restriction as a result of the left elbow, but noted that he expected McCay to return to full duty without restriction on approximately February 26, 2005. (A.R. 0044). Dr. Cool indicated that McCay was not "totally disabled" for "any occupation" as of his December 7, 2004 evaluation, though he determined that he was "totally disabled" for "his regular occupation" as of that date. (A.R. 0045). Dr. Cool also indicated that McCay was "able to go to work" on October 26, 2004, with "restriction of 30 lb weight lifting limit" for his left elbow. (A.R. 0045).

On February 11, 2005, the Pension Committee issued its determination denying McCay's application for a disability pension. The Committee considered the following

7

physicians' reports, which McCay submitted in support of his claim:

> Diagnosis: Bicep Tendon Avulsion; Herniated disk (back)
>
> Physical impairment rating: Dr. T. McCool - Class III (slight limitation of functional capacity; capable of light work).  Dr. M. Berchuck - Class I (No limitation of functional capacity; capable of heavy work).
>
> Indicated permanent restrictions and limitations: No lifting over 30 lbs. Left elbow
>
> Return to work: Dr. Berchuck - Patient may return to fully duty work as of November 24, 2004.  Dr. McCool - Patient may return to work with restriction of 30 lb. weight lifting as of October 26, 2004.
>
> Treating physician's documented opinion: Dr. Berchuck – No restricted employment activities.  Dr. McCool – Disabled from regular occupation, expects fundamental or marked change in future with return to full duty work.  Not disabled for any occupation.

(A.R. 0008). After reviewing this evidence, the Committee, in explaining its determination to deny pension benefits, stressed that both of McCay's treating physicians "clearly state that claimant is not permanently and totally disabled by bodily injury or disease to such an extent as to render it impossible for claimant to engage and/or to follow a substantially gainful occupation." (A.R. 0008). Accordingly, the Committee found that McCay "d[id] not satisfy the requirements of permanent and total disability within the meaning of the pension plan." (A.R. 0008).

McCay admits receiving a copy of Drummond's denial decision in February 2005. (Req. for Admission, Doc. 39-3, at 5, 11).

### D.     Terms of Appeal Under the Pension Agreement

The Pension Agreement provides the following appeal rights: "A claimant may, within 180 days after receipt of a notice of claim denial, appeal to the Pension Committee and request a review of the denial of benefits." (Req. for Admission, Doc. 39-3, at 6, 11) (emphasis added). McCay was notified in the determination letter that "You, the claimant, have 180 days from receipt of this determination within which to submit an appeal to the company." (A.R. 0032). The notice also outlined Drummond's procedures for such appeals, which includes the opportunity to "submit comments, documents, records, and other information relating to your claim." (A.R. 0032). Further, the appeals procedure provides that "[a]ll comments, documents, or other information that you submit relative to your claim will be taken into account, even if that information was not submitted or considered in connection with this determination." (A.R. 0032) (emphasis added).

Admittedly, McCay did not appeal the decision of the Pension Committee within 180 days, nor did he submit any additional comments, records, or documents relating to his claim during that time frame. (Req. for Admission, Doc. 39-3 at 6, 11). The 180-day time frame for appeal expired in August 2005.[7]

---

[7]   August 2005 represents six months (180 days) from February 2005, when McCay admits to receiving the benefits determination letter, dated February 11, 2005. (Req. for Admission No. 1, Doc. 39-3 at 6, 11).

### E.    McCay's Second Application Rejected as Untimely

More than one year after the expiration of McCay's 180-day appeal period, on September 19, 2006, McCay submitted a second Disability Pension Application to Drummond, informing the Pension Committee that he had recently been approved for Social Security disability benefits. (A.R. 0010-0011).[8] The favorable Social Security Administration ("SSA") decision, issued on September 11, 2006, determined that McCay's disability onset date for the purpose of SSI benefits was June 15, 2004. (A.R. 0024). McCay had not been a Drummond employee for one year and nine months at the time he submitted this second application. (A.R. 0004).

The Pension Committee responded by letter dated November 21, 2006. (A.R. 0004-0005). The letter acknowledged receipt of the favorable September 11, 2006, SSA determination, but stated "that the standard used by the [SSA] in deciding whether you are entitled to government benefits is not the same standard contained within the Drummond [Pension Agreement]." (A.R. 0004). Further, the Pension Committee rejected what it interpreted to be a second application for benefits and advised McCay that:

> The information you have recently provided does not provide any pertinent medical information concerning your medical condition <u>during your employment</u> (which ended on December 15, 2004) beyond the

---

[8]   Apparently, McCay was not represented by counsel for the purpose of filing his second application for benefits.

> information you submitted with your 2004 claim. <u>To the extent that you intended to submit a new claim, it is in essence the same claim that you submitted in December 2004,</u> and the Pension Committee is required by the language of the Plan to stand by the decision rendered in February 2005.

(A.R. 0004) (emphasis added). The Pension Committee also noted: "[t]o the extent that you intended to submit the recent information as an appeal from the Committee's February 2005 decision, any such appeal would not be timely." (A.R. 0005).

## F.    McCay's Attempted Notice of Appeal Rejected as Untimely

On March 10, 2008, McCay's attorney, Myron Allenstein, sent a purported "Notice of Appeal" letter to Drummond on behalf of McCay, arguing without citation to authority that "the law of the Eleventh Circuit always allows consideration of newly submitted evidence of disability." (A.R. 0081).[9] The attempted appeal letter attached the favorable SSA decision dated September 11, 2005, as well as letters from McCay's treating physicians dated in 2006. Acknowledging the delay, the letter explained: "Mr. McCay delayed filing an appeal of the disability pension because he was waiting on the Social Security decision." (A.R. 0081). Mr. Allenstein also stated that, "[i]n my opinion, the notice of denial of benefits was deficient under ERISA which will toll the statute of limitations." (A.R. 0081). In closing, Mr. Allenstein

---

[9]  Notably, the "Notice of Appeal" letter was sent some 31 months after the expiration of the 180-day appeal deadline pertaining to McCay's original application for pension benefits was denied and almost 16 months after the second application was rejected.

requested that "[i]f this letter is not allowed as a valid notice of appeal, please consider it a new application for benefits." (A.R. 0082).

The Pension Committee rejected the attempted Notice of Appeal, as well as the alternative request for a new benefits application, as untimely. (A.R. 0092). The letter explained that Drummond's Pension Agreement "does not contemplate tolling the time for appeal while 'waiting on the Social Security decision.'" (A.R. 0092). Moreover, Drummond denied any deficiency under ERISA in its initial denial notice, pointing out that McCay's Notice of Appeal failed to identify the nature of any alleged deficiencies. Finally, the letter explained that McCay's Notice of Appeal "d[id] not contain any pertinent medical information concerning Mr. McCay's medical condition during employment (which ended on December 15, 2004), beyond the information he submitted with his 2004 claim." (A.R. 0092).

## G.    The Lawsuit Filed By McCay

On September 23, 2008, McCay filed his complaint against Drummond in the Circuit Court of Etowah County, Alabama, asserting a claim for pension benefits under ERISA, and Drummond thereafter removed the case to this court based upon federal question jurisdiction. (Doc. 1). McCay alleged in his complaint that he "exhausted his administrative remedies," (Complt. ¶ 13), yet also asserted that "[d]uring 2004, 2005, and 2006, Plaintiff suffered significant depression which

interfered with his ability to understand and follow through with detailed actions and to effectuate an appeal." (Complt. ¶ 12).

Around the same time, McCay was pursuing his appeal of his denied SSA disability application. (Req. for Admission No. 7, Doc. 39-3 at 6, 11).

### H.   Remand Order and Subsequent Proceedings

On March 2, 2009, the court exercised its discretion and remanded the case to the Pension Committee to allow McCay to submit additional evidence in support of his disability benefit claim, including the recent favorable SSA determination. (Docs. 16, 17). In its Memorandum Opinion and Remand Order, the court did not make any finding that the initial denial of McCay's claim was erroneous, nor did it reach any holding as to whether the 180-day time period for McCay to challenge the denial was unreasonable or arbitrary.[10] The court merely concluded that it would exercise its discretion to allow this new evidence to be considered after considering several factors (the brief pendency of the case, that the additional evidence was submitted *before* the inception of the litigation, etc.). (Doc. 16 at 8-10).[11]

---

[10]   In a footnote in its June 28, 2010, Order requiring briefing on Plaintiff's Motion to Reinstate, the court clarified that "the issue of whether Plaintiff should not be allowed access to additional administrative remedies was resolved in Plaintiff's favor. <u>The Court did not decide the issue of whether Plaintiff had, in fact, exhausted his administrative remedies prior to bringing this lawsuit</u>. . . ." (Doc. 21 at 3 n.1) (emphasis added).

[11]   Specifically, the court reasoned in its Memorandum Opinion concerning remand:

Remand is appropriate in this instance for several reasons. First, McCay's additional

After the court remanded the claim to the Pension Committee, McCay was allowed the opportunity to submit additional information to support his claim, and the Pension Committee reviewed all of the additional information submitted. (A.R. 0104). Drummond also submitted the additional evidence offered by McCay to Dr. Bruce W. Romeo, an independent medical professional, for his review, and he offered his medical opinion that the disability application was appropriately denied notwithstanding the additional evidence. (A.R. 0099). The Pension Committee also

---

evidence was submitted <u>before</u> the litigation was initiated. . . . Second, this is a relatively new case, and has not been consuming the parties' resources for several years (or months for that matter). *See Johnson v. Hartford Life & Accident Ins. Co.*, No. 4:07-CV-2203-VEH, slip op. at 10 (N.D. Ala. July 31, 2008) (considering whether a case was relatively new as a factor in remanding a case). Additionally, McCay's award of Social Security benefits is a relevant, though not dispositive, question in determining benefits in an ERISA case, and the decision sets his disability onset date at a time prior to Drummond's denial of benefits. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n. 5 (11th Cir. 1997) ("Although a court may consider this information in reviewing a plan administrator's decision regarding eligibility for benefits under an ERISA-governed plan, an award of benefits by the Social Security Administration is not dispositive of the issue before us.") (citations omitted). Similarly, reports of total disability from McCay's physicians would also be relevant in determining McCay's disability *vel non* status. Next, Eleventh Circuit case law indicates that, in an arbitrary and capricious review of a plan administrator's decision, it is inappropriate to consider evidence outside of the administrative record. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008); *but see Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir.1994) ("[A] district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination."). Finally, acknowledging ERISA's competing congressional purposes as recognized by the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), a remand is not so burdensome for Drummond, such that it outweighs the equally compelling considerations applicable to "enhanced protection for" employees, such as McCay, who apply for benefits covered under a work-related policy of insurance. . . . .

(Doc. 16 at 8-9) (emphasis in original).

participated in a phone call with Dr. Romeo to hear his conclusions and had an opportunity to ask him questions about his review. (A.R. 0100).

The Committee then convened in person on April 20, 2009, to review the court's order granting remand, to review Dr. Romeo's response letter dated April 11, 2009, and to discuss the SSA decision rendered September 11, 2006, which awarded government disability benefits to McCay. (A.R. 0100). The Committee discussed how the SSA determination followed a different legal standard and considered a knee replacement surgery and other medical conditions that were not present at the time of McCay's termination. (A.R. 0100). Ultimately, the Committee unanimously agreed that none of the additional information submitted supported a reversal of its initial determination that McCay failed to meet the requirements for disability pension benefits according to the terms of the Pension Agreement. (A.R. 0100).

Thereafter, the Pension Committee issued its written determination, dated June 18, 2009, holding that the disability application was again denied under the following reasoning:

> As directed by the Court, the Pension Committee has reviewed the Claimant's application for disability benefits, including all medical information which had not previously been considered by the Pension Committee but which had been submitted by Mr. McCay to the Court, and Mr. McCay's Social Security Disability award, and has determined that the application does not satisfy the requirements of permanent and total disability within the meaning of the Pension Plan. The plan

requires that the claimant be totally disabled by bodily injury or disease to such an extent as to render it impossible for claimant to engage in, or to follow, a substantially gainful occupation. The Pension Committee has not adopted the Social Security Administration's regulations for determining eligibility for Social Security Disability payments, and declines to do so.  The Pension Committee recognizes that the Social Security Administration awarded Social Security disability benefits to Mr. McCay on September 11, 2006, but recognizes that the Social Security Administration['s award] was based in large part on Claimant's post-employment medical problems with his right knee.  For example, the ALJ notes "claimant's evidence establishes status post multiple surgeries to the right knee, including total arthroplasty," and that "he had recently developed pain on the lateral aspect of the right knee that radiated down his calf and into his foot."  Those knee problems were not presented to the benefits Committee when it made its benefit determination in February 2005.  Furthermore, the knee problems do not appear to have been particularly disabling during claimant's employment, as knee problems were not mentioned at all by the physicians['] reports submitted to the Benefits Committee in December 2004; those statements addressed only low back pain and a left biceps tendon injury. The Social Security ALJ also relied on claimant's testimony that "he was unable to work due to back pain and right leg pain."  There is no evidence that problems with Claimant's right knee affected ability to work in December 2004. Claimant's treating physicians, Timothy McCool, M.D., and Matthew Berchuck, M.D., clearly stated in December 2004 that claimant was <u>not</u> <u>permanently</u> <u>and</u> <u>totally</u> <u>disabled</u> by bodily injury or disease to such an extent as to render it impossible for claimant to engage and/or to follow a substantially gainful occupation as of the last day of his employment. The Committee does not find that there is sufficient evidence to show that Claimant's treating physicians were wrong when they certified in December 2004 that Claimant was <u>not</u> permanently and totally disabled. Claimant has not submitted any additional medical evidence that he was totally and permanently disabled according to the terms of the Plan when Claimant was last employed, on December 15, 2004.

(A.R. 0104-0105) (emphasis in original).

## I.   McCay Continues to Submit Additional Evidence

After the Pension Committee's written determination upholding denial of McCay's pension application post-remand, McCay's attorney continued to submit additional information on four separate occasions between July and August of 2009. (A.R. 0107-0270 (submitted on July 6, 2009); A.R. 0271-0309 (submitted on July 20, 2009); A.R. 0310-0560 (submitted on July 20, 2009); A.R. 0561-0681 (submitted on August 30, 2009)). In light of this additional information, Drummond decided to submit its June 18, 2009, determination to another round of administrative review by Terry Whitt, Vice President of Human Resources. (A.R. 0684-0692). Whitt also consulted with Dr. Thomas E. Powell,[12] a medical practitioner, to receive an additional recommendation based on his independent review of all the medical evidence. (A.R. 0693). Dr. Powell provided the following medical opinion:

> …it is my opinion that based on the clinic notes through November 23, 2004, the fact that Mr. McCay was totally released to full duty work by Dr. Berchuck and was only on slight limitation of functional capacity in reference to his left elbow per Dr. Tim Cool, Mr. McCay was neither totally nor permanently disabled. As Mr. McCay's last date of employment was December 15, 2004, and that he was completely released by one doctor and on light duty by the other, I would submit that he could not be deemed permanently and totally disabled at that time.
>
> It is my opinion that at the time of Mr. Kevin Keith McCay's last

---

[12] Dr. Powell is a board certified, ABOS, medical practitioner with Southern Orthopaedic Specialists, P.C. (A.R. 0693).

employment with Drummond Company Inc., he was neither totally nor permanently disabled.

(A.R. 0693). Upon this independent review, Whitt upheld the decision as the final step of the appeal process in a nine-page Determination on Appeal Notice dated September 24, 2009. (A.R. 0684-0692). The Determination Notice explained in relevant part:

> At the time [McCay] ceased employment with Drummond, he was not permanently and totally disabled within the meaning of the plan. . . . The Reviewer has reviewed the additional records that Mr. McCay submitted on appeal. Those records do not indicate that the opinions of Dr. Berchuck or Dr. Cool in December 2004 were incorrect. The Reviewer also noted that the recently submitted records showed Dr. Berchuck had recently examined or treated Mr. McCay, but has not revoked or amended his opinion of Mr. McCay's status as of December 2004. The additional records do not otherwise indicate that Mr. McCay was, during his employment, totally disabled by bodily injury or disease to such an extent as to render it impossible for him to engage in, or to follow, a substantially gainful occupation at that time.

(A.R. 0691) (emphasis added).

### J.     Subsequently Obtained Letters

Six months after receipt of Drummond's final determination on remand, McCay's attorney continued to submit additional information, including newly obtained letters from Dr. Berke, Dr. Gossman, and Dr. Berchuck. (A.R. 0694-0699 (submitted March 24, 2010); A.R. 0704-0707 (submitted April 29, 2010)). Although these submissions were considered untimely by Drummond because the appeal

process was complete, the Pension Committee nonetheless considered this additional evidence and also sent all information from McCay's entire claim history to Dr. Romeo for yet another medical review. (A.R. 0700-0703).

Dr. Romeo reported his findings to the Committee in May 2010, and again concluded that the November 2004 pension application was appropriately denied. (A.R. 0708-0709). By letter dated June 11, 2010, the Pension Committee communicated to McCay, through his attorney, that it would not disturb its final determination denying the disability claim that was rendered on September 24, 2009. (A.R. 0710-0713).

On June 15, 2010, the Plaintiff filed his Motion to Reinstate Claim, which the court granted. (Doc. 20).

## III.   STANDARD ON SUMMARY JUDGMENT[13]

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[14]   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc.*

---

[13]   Although this matter is before the court on Drummond's motion summary judgment pursuant to Rule 56, the Eleventh Circuit recently noted that, due to the peculiar standards of review for ERISA cases, traditional Rule 56 practice may be unnecessary.  *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008).  Courts in this circuit have recognized that the summary judgment standard is not appropriate in ERISA cases where "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs. Inc.*, 133 Fed. App'x 740, 2005 WL 894840, at *7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)); *see Ruple v. Hartford Life & Accident Ins. Co.*, 340 Fed. App'x 604, 611 (11th Cir. 2009) ("[The] typical summary judgment analysis does not apply to ERISA cases."); *Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

[14]   Rule 56 was amended in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955) ("Both parties filed and argued motions for summary judgment, but this does not warrant the granting of either motion if the record reflects a genuine issue of fact.").[15]  The court will consider each motion independently, and in accordance with the Rule 56 standard. *See U.S. v. Diebold, Inc.*, 369 U.S. 654, 655  (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.").  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."  WRIGHT, MILLER & KANE, FED. PRACTICE & PROC. § 2720, at 327-28 (3d ed. 1998).

## IV.   ANALYSIS

The parties have raised several pivotal issues in their briefs, and the court

---

[15]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

considers those issues in the following order: (1) whether McCay's failure to exhaust his administrative remedies should be excused; (2) assuming McCay's claim is not barred by his failure to exhaust administrative remedies, what standard of review should the court apply to Drummond's denial of ERISA pension benefits; and (3) applying that review, whether either party is entitled to summary judgment.

## A.    Exhaustion of Remedies

Throughout the course of this lawsuit, Drummond has consistently maintained its position that McCay has failed to exhaust his administrative remedies relating to his disability pension claim and, accordingly, his ERISA claims are barred from litigation in this court. Because the court's conclusion on this issue is potentially dispositive of McCay's ERISA claims, the court carefully examines exhaustion of remedies as a threshold matter.

### 1.    The Eleventh Circuit Requires Administrative Exhaustion of Remedies in ERISA Cases

The ERISA statute mandates that employee benefit plans subject to its coverage "*shall . . .* afford a *reasonable opportunity* to any participant whose claim for benefits has been denied *for a full and fair review* by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C.A. § 1133(2) (emphasis

added).[16] Notably, nowhere does ERISA's text mandate administrative exhaustion of remedies as a prerequisite to filing suit under ERISA on a benefits denial claim, though most courts have judicially imposed an exhaustion requirement based on ERISA's provision for a full and fair review. *See* Kathryn J. Kennedy, *The Perilous and Ever-Changing Procedural Rules of Pursuing an ERISA Claims Case*, 70 UMKC L. Rev. 329, 358-59 n.158 (2001) ("While ERISA has no express provision requiring exhaustion of administrative remedies prior to suit, the courts have imposed a judicially required mandate in order to bring a civil action for benefits." (compiling cases)); *see generally* Andrew Stumpff, *Darkness at Noon: Judicial Interpretation May Have Made Things Worse for Benefit Plan Participants under Erisa than Had the Statute Never Been Enacted*, 23 St. Thomas L. Rev. 221, 223 (2011) ("Most federal circuits require that a participant disputing a benefits denial under a plan must first exhaust all his or her rights of appeal under the plan itself, before seeking redress

---

[16]   Federal regulations also mandate certain requirements for an ERISA claims procedure to ensure that the procedure is "reasonable." According to the regulations, in order to comply with ERISA's requirements for a reasonable claims procedure, "a plan established and maintained pursuant to a collective bargaining agreement," must "set[ ] forth or incorporate[ ] by specific reference":

> (A) Provisions concerning the filing of benefit claims and the initial disposition of benefit claims, and

> (B) A grievance and arbitration procedure to which denied claims are subject.

29 C.F.R. § 2560.503-1(b)(2)(A)-(B).

in the courts."); *but see* Brendan S. Maher, *Creating a Paternalistic Market for Legal Rules Affecting the Benefit Promise*, 2009 Wis. L. Rev. 657, 676 (2009) ("Given ERISA's protective intent, it is unlikely that Congress intended for administrative review to be a necessary precondition for a lawsuit. . . .").

The Eleventh Circuit generally requires exhaustion of administrative remedies as a precondition to filing an ERISA action. *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("Our law is well-settled that 'plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'" (quoting *Counts v. Amer. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985) ("We therefore hold that the district court did not err in holding that plaintiffs must exhaust their remedies under the pension plan agreement before they may bring their ERISA claims in federal court.").[17]

---

[17]   The Court in *Mason* discussed some of the underlying reasoning for requiring administrative exhaustion as a prerequisite to ERISA suits:

> Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated. *See Kross* [*v. W. Elec. Co.*, 701 F.2d 1238, 1244–45 (7th Cir. 1983)]; *Amato v. Bernard*, 618 F.2d 559, 567–68 (9th Cir. 1980). In addition, imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures. 29 U.S.C.A. § 1133; *see also* H.R. Conf. Rep. No. 1280, 93d Cong., 2d

However, the Eleventh Circuit's ERISA exhaustion requirement is not without exception. *See Perrino*, 209 F.3d at 1315 ("Our caselaw makes plain that as a *general rule* plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." (emphasis added)). The Eleventh Circuit recognizes an exception to the exhaustion requirement where "resort to the administrative route is <u>futile</u> or the <u>remedy inadequate</u>." *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990) (emphasis added), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314 (11th Cir. 2001). Additionally, the Eleventh Circuit has recognized an exception to the exhaustion requirement where the plaintiff's failure to exhaust her administrative remedies resulted from certain language in the plan's summary description that the plaintiff "reasonably interpreted as meaning that she could go straight to court with her claim." *Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1204 (11th Cir. 2003). Where a valid exception applies, the district court has wide discretion to excuse the exhaustion requirement. *Perrino,* 209 F.3d at 1315 ("The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which we review only for a *clear*

---

Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4639, 5038, 5108.

763 F.2d at 1227.

abuse of discretion." (emphasis in original)).

As to the futility exception, the Eleventh Circuit has clarified that it does not apply simply because the same parties who made the initial benefits determination were also the decision makers in the administrative appeal process. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008). Rather, "the futility exception protects participants who are denied meaningful access to administrative procedures, not those whose claims would be heard by an interested party." *Id.* For instance, in *Curry*, the Eleventh Circuit found that the futility exception applied where the "plan administrators had denied a participant meaningful access to administrative proceedings by repeatedly ignoring requests for documents supporting the denial of benefits." 891 F.2d at 846. Conversely, in *Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897 (11th Cir. 1990), the Eleventh Circuit reversed the district court's application of the futility exception where the plan participant invoked the exception on the basis that the initial internal decision maker and the decision maker on appeal shared "an interest in holding costs down." *Id.* at 901.[18]

As to the inadequacy of remedy exception, the Court in *Perrino* acknowledged, based on "clear" prior precedent, "that the exhaustion requirement for ERISA claims

---

[18]   "Because the district court's excusal of Springer from the exhaustion requirement is unsupported by the record and premised on misconceptions of law, the district court plainly abused its discretion in not dismissing Springer's lawsuit for failure to take prior advantage of the Plan's internal appeals process." *Id.*

should not be excused for technical violations of ERISA regulations that do not deny plaintiffs <u>meaningful access to an administrative remedy procedure through which they may receive an adequate remedy</u>." *Id.* at 1317 (emphasis added).

Moreover, the Eleventh Circuit has expressed a disinclination toward expansion of the exceptions to exhaustion. In *Perrino*, for example, the Eleventh Circuit rejected a proposed "new exception to our exhaustion requirement; namely, that an employer's noncompliance with ERISA's technical requirements (for example, creating a summary plan description, or delineating a formal claims procedure) should excuse a plaintiff's duty to exhaust administrative remedies." *Id.* In declining to further expand the exceptions to exhaustion based on technical noncompliance with ERISA, the Court provided the following instructive guidance:

> This approach conforms with the logic of our exhaustion doctrine in which <u>we apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances</u>. *See Counts*, 111 F.3d at 108; *Springer*, 908 F.2d at 899; *Curry*, 891 F.2d at 846-47. Our exceptions to this doctrine where resort to an administrative scheme is unavailable or would be "futile," or where the remedy would be "inadequate" simply recognize that there are situations where an ERISA claim cannot be redressed effectively through an administrative scheme. In these circumstances, requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism. That said, it makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case, the plaintiffs still had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court. *Cf.*

*Curry*, 891 F.2d at 846-47 (finding that "[w]hen a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has the discretion not to require exhaustion"). <u>Therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit</u>.

*Id.* at 1318 (emphasis added).

### 2.    Application

As a preliminary matter, Plaintiff acknowledges his failure to exhaust his administrative remedies in this case by admitting his failure to appeal Drummond's initial denial of pension benefits within the set 180-day time frame. (See Background section, *supra*).[19] Rather than argue that he has satisfied the Eleventh Circuit's requirement of administrative exhaustion, McCay instead suggests that he should be excused from the requirement altogether.

Despite McCay's several attempts to evade the exhaustion requirement, which the court will address in turn, the court does not find that any of the currently developed exceptions in Eleventh Circuit case law, described *supra*, apply to his case. Further, McCay does not argue that any of these established exceptions apply. Instead, McCay unpersuasively asserts that he should be excused from his admitted failure to follow the administrative appeals process because of his depression. McCay

---

[19]  Both parties also concede that the Pension Agreement constituted an ERISA plan for the relevant time period.

alleges in his complaint that depression interfered with his ability to timely appeal Drummond's denial of his disability pension application. (Complt. ¶ 12 ("During 2004, 2005, and 2006, Plaintiff suffered significant depression which interfered with his ability to understand and follow through with detailed actions and to effectuate an appeal.")). McCay does not cite to any Eleventh Circuit case in which ERISA exhaustion requirements were excused based on a theory of mental incapacity, nor has this court been able to locate any such case. Additionally, several factual considerations prevent the court from being persuaded by McCay's attempt to excuse his failure to appeal because of his depression.

First, McCay has not argued, much less provided evidence, that his depression was severe enough to constitute mental incapacity. As Drummond observes in its briefing, McCay does not argue or allege "mental incompetence" or "legal incompetence." (Doc. 38 at 18.).

Next, the court observes an irreconcilable tension between the pre-litigation position advocated by McCay's attorney—informing Drummond by letter dated March 10, 2008, letter that "Mr. McCay delayed filing an appeal of the disability pension because he was waiting on the Social Security decision" (A.R. 0081) (emphasis added)—and his post-litigation position that the delay was based on his depression. Similarly, based on this court's review of the administrative record, it can

29

find no evidence that Drummond was informed prior to the filing of this lawsuit of McCay's depression as a reason for his failure to timely appeal.

Finally, the court observes an unexplained discrepancy in the time frame within which McCay asserts that he was unable to pursue Drummond's appeals process due to depression, which is the same general time frame within which McCay apparently hired an attorney and successfully appealed his unfavorable Social Security benefits determination. In his response to Drummond's Requests for Admission, McCay admitted that he "appealed the denial of his SSA claim in 2005," (Doc. 39-3, at 6, 11)[20] with the assistance of counsel "who successfully handled the appeal." (*Id.* at 11). McCay provides no explanation why his depression prevented him from timely pursuing an appeal of his pension benefits during the same time frame that he hired an attorney to pursue his appeal of SSA benefits, nor can the court conceive of any reason that could explain this glaring discrepancy. Further, as McCay was admittedly represented by legal counsel concerning the pursuit of SSA disability benefits related to his back and tendon injuries in 2005, he should have been advised by such counsel

_____

[20]   Although nothing in Plaintiff's response, complaint, or briefing before the court provides the exact date "in 2005" that McCay hired the attorney who handled his SSA appeal, McCay admits that he "was pursuing his appeal of his SSA disability application" "[d]uring th[e] same timeframe" as he was suffering from the "significant depression" alleged in his complaint. (Doc. 41 at 3 (admitting facts set forth in Doc. 38 at 8 ¶¶ 28, 29)) (emphasis added). Absent any indication to the contrary, the court thus presumes that McCay was actively pursuing his SSA appeal, and likely represented by counsel, within the 180-day app eal period for his pension disability benefits, which ran from February 11, 2005, until August 10, 2005.

of the need to preserve his rights by submitting a timely appeal of his denied pension benefits with his former employer.

For all these reasons, McCay's alleged depression does not serve to excuse the exhaustion of remedies requirement imposed by the Eleventh Circuit, as it neither has a reasonable basis based on the facts of this case, nor does it fit into one of the developed exceptions to the exhaustion requirement.

Likewise, nor does McCay's passing argument that certain alleged deficiencies contained in Drummond's notice of denial of benefits (which Drummond denies) excuse McCay's failure to appeal within the designated 180-day time period. *See Perrino*, 209 F.3d at 1315 (rejecting exception to ERISA exhaustion requirement based on employer's "noncompliance with ERISA's technical requirements"). McCay's counsel sent a letter to Drummond on July 14, 2008, asserting that the denial notice failed to include a "notice of waiver of rights if no formal notice was filed in 180 days," and that "[t]he denial did not explain what evidence would be required to substantiate his claim." (A.R. 0093-0094). The court finds that, even if true, the type of "noncompliance with ERISA's technical requirements" that McCay alleges is of the type that the Court in *Perrino* concluded was insufficient to excuse ERISA's administrative exhaustion requirement. *Id.* at 1317 ("[T]he exhaustion requirement for ERISA claims should not be excused for technical violations of

ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy.").

Therefore, the court finds that McCay has failed to exhaust his administrative remedies, and as such, his ERISA claim is barred from further litigation in this court. Despite the court's holding on this issue, however, the court will proceed to analyze, as an alternative basis for its decision, the second and third issues raised concerning which standard of review applies, and whether either of the parties are entitled to summary judgment under that standard.

## B.  ERISA Standard of Review

ERISA does not contain a standard of review for actions brought under § 1132(a)(1)(B) challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09, 109 S. Ct. 948, 953 (1989) ("Although it is a 'comprehensive and reticulated statute,' ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations.").[21]

Moreover, the case law that has developed over time governing such standards has

---

[21]  ERISA provides "a panoply of remedial devices" for participants and beneficiaries of qualifying benefit plans. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). McCay asserts that he is entitled to disability benefits under his former employer's pension plan based on § 1132(a)(1)(B). "That provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Firestone Tire*, 489 U.S. at 108. The following analysis, therefore, is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging benefit denials based on plan interpretations; the court does not address the appropriate standard of review for actions under any other remedial provisions of ERISA.

significantly evolved. A history of the evolution of these standards is useful to track its development and shed light on the current framework.

In *Firestone*, the Supreme Court initially established three distinct standards for courts to employ when reviewing an ERISA plan administrator's benefits decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997) (discussing *Firestone*, 489 U.S. at 115)).  In *Williams v. Bellsouth Telecomms.*, *Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008), the Eleventh Circuit fleshed out the *Firestone* test into a six-step framework designed to guide courts in evaluating a plan administrator's benefits decision in ERISA actions. When the Eleventh Circuit created the *Williams* test, the sixth step of the sequential framework required courts reviewing a plan administrator's decision to apply a heightened arbitrary and capricious standard if the plan administrator operated under a conflict of interest. *See id.* The Eleventh Circuit later modified this step in response to the Supreme Court's ruling in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S.

105, 115-17 (2008), which concluded that a conflict of interest should be weighed merely as "one factor" in determining whether an administrator abused its discretion. *See Doyle v. Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1359 (11th Cir. 2008) ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision."). The Eleventh Circuit's latest iteration of the *Firestone* standard-of-review framework is found in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011), *petition for cert. filed*, 80 U.S.L.W. 3245 (U.S. Sept. 28, 2011) (No. 11-444):

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.[22] All steps of the analysis are "potentially at issue" where a plan vests discretion to the plan administrator to make benefits determinations. *See id.* at 1356 n.7. Conversely, then, where a plan does *not* confer discretion, the court simply applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See* 489 U.S. at 115 ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

In this case, the parties dispute the appropriate standard of review for the court to apply.[23] McCay asserts that *de novo* review is called for, while Drummond

_____

[22]  "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Blankenship*, 644 F.3d at 1355 n.5.

[23]  The answer to which standard applies carries great significance in relation to the scope of this court's evidentiary review. On one hand, if the *de novo* standard applies because the plan at issue does not grant the administrator or fiduciary discretionary authority, then the court is not limited in its review to simply those facts that were before the administrator at the time of the decision.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination."). On the other hand, if the arbitrary and capricious standard applies, triggering application of the six-step analysis discussed above, then the court is limited in its review to the facts available to the administrator at the time of the determination. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246-47 (11th Cir. 2008) (stating, in a case where the claims administrator had discretion under the plan, that when evaluating whether the claims administrator's decision was

35

maintains that discretionary or arbitrary and capricious review is required.[24]

While McCay bears the burden of proving his entitlement to ERISA benefits under Drummond's pension plan, *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998), Drummond bears the burden of proving that the arbitrary and capricious standard of review applies. *Anderson v. Unum Life Ins. Co. of America*, 414 F. Supp. 2d 1079, 1095 (M.D. Ala. 2006) (citations omitted). Based upon the terms of the Plan as discussed more fully below, the court agrees with Drummond that the modified arbitrary and capricious review is proper.

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion distinction:

> The recent Supreme Court case which holds that a *de novo* standard of review is proper under some plans validates the prior law of this Circuit that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). The [C]ourt held that
>
> a denial of benefits challenged under [29 U.S.C.A.] §

---

wrong, "[w]e are limited to the record that was before [the claims administrator] when it made its decision").

[24] As a result of the Supreme Court's decision in *Glenn*, as interpreted by the Eleventh Circuit in *Doyle*, only two ERISA standards of review now exist in the context of challenging a plan administrator's claim decision—either *de novo* or modified arbitrary and capricious. *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

1132(a)(1)(B) is to be reviewed under a *de novo* standard <u>unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan</u>.

*Firestone*, 109 S. Ct. at 956.

<u>The plan in this case does give the administrator of the plan</u> "<u>discretionary authority</u> to determine eligibility for benefits [and] to construe the [plan's] terms." *Id.* For example, <u>the plan states</u>,

As a condition precedent to coverage, it is agreed that whenever <u>the Claims Administrator makes reasonable determinations in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically Necessary . . .) such determinations shall be final and conclusive</u>.

*Jett*, 890 F.2d at 1138-39 (emphasis added). Therefore, in *Jett*, the court first looked to the language of the plan in order to evaluate the standard of review issue.[25] *Accord Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) ("Accordingly, we look to all of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness standard applicable.").

Here, the terms of the plan clearly and expressly confer discretion to the plan administrator, the Pension Committee, to interpret and apply the provisions of the Pension Agreement: "Such disability and the continuance and permanency thereof

---

[25] In *Jett*, the parties agreed that the arbitrary and capricious standard of review applied. *Id.* at 1138 ("The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard.").

and such other qualification shall be determined by the Pension Committee and such determinations of the Pension Committee shall be controlling." (Doc. 1-3 at 14-15). McCay does not dispute that the Pension Agreement unambiguously vests discretion to the Pension Committee to interpret its terms and make benefits determinations, but instead conclusorily argues, without any analysis or citation to legal authority, that because Drummond vested discretion to itself, the arbitrary and capricious standard does not apply. McCay's entire argument on this point is set out below:

> Review is *de novo.* The Pension Committee is on [sic] extension of the Drummond Company. There has been no delegation to a third party. Under *de novo* review, the Court is allowed to make a fresh decision on McCay's claim for disability pension.

(Doc. 36 at 17). Further, after review, the court has found no legal or persuasive support for McCay's position.

Accordingly, the court agrees with Drummond that the language of the Pension Agreement sufficiently confers discretion to the plan administrator as to make McCay's ERISA claim appropriately reviewed under the modified arbitrary and capricious standard.

### C.    Drummond's Decision was Reasonable Under Arbitrary and Capricious Review

Even if McCay's claims were not barred because of his failure to comply with the exhaustion requirement, the court alternatively finds that the Pension Committee's

decision denying benefits was nevertheless supported by reasonable grounds under the modified arbitrary and capricious standard.  *Cf. Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) ("A decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision."). Therefore, McCay's claim would also be denied under that standard, and summary judgment is due to be granted in favor of Drummond.

### 1.    Untimely Nature of Documents Submitted

The underlying theme of McCay's continual attempts to submit newly obtained documentation in this case is his perception that "Drummond was under a continuing duty to consider new evidence." (Doc. 16, at 2). Plaintiff relies solely on the authority of *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997), to support his proposition that "the administrator always has the duty to examine new evidence of disability." (*E.g.,* Doc. 8 at 1). In *Shannon*, the "district court relied on *Bucci v. Blue Cross-Blue Shield of Conn.*, 764 F. Supp. 728, 732 (D. Conn. 1991), holding that since a defendant's duty to provide benefits 'is a continuing one, its refusal to provide benefits is thus a continuing denial, the propriety of which is measured against the information available from time to time.'" *Id.* However, the plaintiff in *Bucci* was "[u]ndisputedly . . . a <u>covered party</u> within the policy of health insurance issued by defendant." 764 F. Supp. at 729 (emphasis added). Here, by

contrast, McCay is no longer a covered party within Drummond's pension plan, as he is no longer employed by the company. Thus, any "continuing" obligation to provide benefits necessarily expired with McCay's termination in 2004.

Moreover, the continuing obligation of review proposition discussed in *Shannon* was in the context of the district court's discretionary decision to remand the case to the plan administrator for review of additional evidence. *Shannon* does *not* stand for the proposition that an ERISA plaintiff may keep submitting additional evidence in perpetuity—a notion that would run afoul of the Eleventh Circuit's policy reasons for imposing an exhaustion of remedies requirement in ERISA cases. *See Mason*, 763 F.2d at 1227 (discussing the "compelling considerations . . . for plaintiffs to exhaust administrative remedies *prior to* instituting a lawsuit" (emphasis added)).

Turning back to one of the cases discussed in the court's previous Memorandum Opinion granting remand, the reasoning of *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir. 2001) supports the idea that McCay's window of opportunity within which to submit documents in support of his disability pension claim has long expired.

> We find persuasive the Eighth Circuit's reasoning in *Davidson v. Prudential Ins. Co. of America*, 953 F.2d 1093 (8th Cir.1992). In that case, Davidson contended that the district court erred in refusing to remand the case to the plan administrator to consider a vocational report and a psychiatrist's report prepared after litigation

had commenced. *See id*. at 1095. The district court refused to remand, because "<u>if Davidson believed the evidence he now offers was necessary for Prudential to make a proper benefits determination, Davidson should have obtained this evidence and submitted it to Prudential</u>." *Id*. We find that this reasoning should apply with equal force to the insurance company as to the beneficiary. Reliance <u>had more than adequate opportunities to establish an administrative record containing evidence contradicting Levinson's evidence</u> pointing to disability on two occasions: when it first considered Levinson's claim and upon Levinson's administrative appeal. <u>Reliance did not do this</u>. It was <u>not until after litigation commenced</u> that Reliance <u>obtained</u> evidence contradicting Levinson's evidence that he was disabled under the policy. Therefore, the district court's refusal to remand the issue of Levinson's eligibility for benefits to Reliance should be upheld.

245 F.3d at 1328 (emphasis added). The court recognizes some similar themes here.

*Before* commencement of this litigation, McCay had "more than adequate opportunities to establish an administrative record" <u>demonstrating his total disability as of December 15, 2004</u> (the date he was terminated and no longer eligible for pension benefits). Even after the litigation commenced, the court exercised its discretion to order remand to the plan administrator, allowing McCay an opportunity to submit the evidence described in his Motion for Remand (Doc. 8), including the recently obtained favorable SSA determination, for further review. Yet, *after* the court's remand, and even *after* the Pension Committee's reviewed the additional information on remand and rendered its decision, McCay *continued* to collect and

submit new information as to McCay's condition *after* his termination (and therefore after his eligibility under the plan had ceased). The Court in *Levinson* upheld the district court's discretionary determination not to consider evidence "obtained" post-litigation. The evidence McCay seeks to submit here was obtained not only post-litigation but *post-remand*. Thus, this court has even stronger grounds upon which to exercise its discretion to decline to consider this new evidence. Reviewing the whole of the administrative record, the court finds no indication that the information obtained post-remand could not have been obtained and submitted earlier. The court agrees with Drummond that neither ERISA nor the terms of the Pension Agreement allow McCay "the right to submit new evidence in support of a failed disability application . . . [in]to infinity." (*See* Doc. 38 at 8). As such, Drummond was under no obligation to consider these documents, which were submitted outside the scope of the court's remand. (*See generally* Doc. 16).

For all these reasons, the court finds that the Pension Committee articulated reasonable grounds for declining to consider the evidence obtained and submitted post-remand.

### 2. Drummond Articulated Reasonable Grounds for Discounting the Additional Evidence Submitted Pre-Remand

Although the court finds that Drummond was under no obligation to consider

the additional evidence obtained and submitted *post*-remand, Drummond nevertheless (without waiving its determination that these documents were untimely) considered them along with all other additional documentation submitted *pre*-remand. After submitting McCay's additional documentation to two different medical reviewers for independent assessments of the new information in the context of the entire claim file, Drummond found no grounds upon which to alter or reverse its initial determination, and it articulated reasonable grounds for discounting the additional documentation.

McCay, in essence, agrees with Drummond about a critical point regarding his disability pension application: that "the case boils down to whether Drummond's denial of a disability pension should be allowed based on Dr. Berchuck's statement on [November 24, 2004] and the medical records of [November 23, 2004], that McCay after surgery on [June 23, 2004] could return to work." (Doc. 36 at 2). McCay argues that he is entitled to the pension because, in fact, he was not able to return to work, as evidenced by 1) pain treatment by Dr. Berke in January and February 2005, including two epidurals, 2) his referral to the Birmingham Pain Clinic on June 14, 2005, and 3) his subsequent award of SSA disability benefits on September 11, 2006, which ascribed an onset date of June 15, 2004. (*Id.*).

McCay misses several key points, which Drummond repeatedly articulated in its correspondence concerning the pension denial. First, the activity that occurred in

January, February, and June 2005 related to his pain treatment could and should have been brought to Drummond's attention during McCay's 180-day appeal period, which ran from February 11, 2005, to August 10, 2005. McCay presents no reasonable explanation as to why he failed to inform Drummond about these continuing pain treatments post-release from his back surgery.

Second, according to the terms of the Pension Agreement, as negotiated by Drummond and the union, the Pension Committee's assessment of McCay's disability for the purpose of determining his eligibility for pension benefits must be measured according to evidence of his total disability *during the time that he worked for Drummond*, not whether he subsequently became disabled at some point after the termination of his employment. It is undisputed that McCay's termination date was December 15, 2004. (*See* Doc. 41 at 2). The additional evidence supporting total disability acquired *after* December 15, 2004, therefore, is not relevant to determination of McCay's eligibility for pension benefits unless it serves to prove that he actually suffered from a total disability *during* his employment period, i.e., before his termination in December 2004. Based on its multiple reviews of McCay's records and evidence acquired after December 2004, including several reviews by independent medical professionals, the Pension Committee concluded that the additional evidence did not support a finding of total disability pre-December 2004.

Thus, the Pension Committee reasonably concluded, under the terms of the Plan, that McCay was not "totally disabled by bodily injury or disease to such an extent as to render it impossible to engage in or to follow a substantially gainful occupation" as of December 15, 2004, his final day of employment with Drummond.

### 3.    Drummond Reasonably and Meaningfully Distinguished the Favorable Social Security Decision

Despite McCay's strong suggestions that Drummond neglected to consider the favorable SSA determination, the record clearly evidences that the Pension Committee did, in fact, review and consider the SSA determination upon remand. McCay inaccurately states that the Committee "disregarded" (Doc. 36 at 20), "never considered" (*id.* at 23), and "ignore[d]" (*id.*) the SSA determination. To the contrary, the Committee's determination letter on remand shows that it not only reviewed the SSA determination but carefully distinguished it, articulating its reasons for doing so:

> As directed by the Court, the Pension Committee has reviewed the Claimant's application for disability benefits, including all medical information which had not previously been considered by the Pension Committee but which had been submitted by Mr. McCay to the Court, and Mr. McCay's Social Security Disability award, and has determined that the application does not satisfy the requirements of permanent and total disability within the meaning of the Pension Plan. The plan requires that the claimant be totally disabled by bodily injury or disease to such an extent as to render it impossible for claimant to engage in, or to follow, a substantially gainful occupation. The Pension Committee has not adopted the Social Security Administration's regulations for determining eligibility for Social Security Disability payments, and

45

declines to do so.  <u>The Pension Committee recognizes that the Social</u> <u>Security Administration awarded Social Security disability benefits to</u> <u>Mr. McCay on September 11, 2006, but recognizes that the Social</u> <u>Security Administration was based in large part on Claimant's post-</u> <u>employment medical problems with his right knee</u>.  For example, the ALJ notes "claimant's evidence establishes status post multiple surgeries to the right knee, including total arthroplasty," and that "he had recently developed pain on the lateral aspect of the right knee that radiated down his calf and into his foot."  <u>Those knee problems were not</u> <u>presented to the benefits Committee when it made its benefit</u> <u>determination in February 2005.</u>  Furthermore, the knee problems do not appear to have been particularly disabling during claimant's employment, as knee problems were not mentioned at all by the physicians reports submitted to the Benefits Committee in December 2004; those statements addressed only low back pain and a left biceps tendon injury.  <u>The Social Security ALJ also relied on claimant's</u> <u>testimony that "he was unable to work due to back pain and right leg</u> <u>pain."  There is no evidence that problems with Claimant's right knee</u> <u>affected ability to work in December 2004</u>.

(A.R. 0104-0105) (emphasis added).[26]

As the court previously stated in its Memorandum Opinion granting remand

(Doc. 16), McCay's award of Social Security benefits is a potentially *relevant*, though

*not dispositive*, factor in determining benefits in an ERISA case.  *See Paramore v.*

*Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n.5 (11th Cir. 1997) ("Although a court

[26]  Although the court's review of the SSA determination reveals that the ALJ did not place a *primary* emphasis on McCay's right knee surgery, as Drummond's determination letter may suggest, the ALJ did consider that injury – which occurred *after* McCay's employment period ended – as a factor that influenced its benefits determination. Drummond correctly determined that the knee surgery in November 2005 would be irrelevant to the issue of whether McCay was eligible for pension benefits as of December 2004 according to Drummond's Plan. As such, Drummond reasonably discredited the SSA decision in part on this ground. Moreover, Drummond also relied on the different legal standards employed by the SSA as compared to the terms of its Plan.

may consider this information in reviewing a plan administrator's decision regarding eligibility for benefits under an ERISA-governed plan, an award of benefits by the Social Security Administration is not dispositive of the issue before us." (internal citation omitted)); *see also Ray v. Sun Life & Health Ins. Co.*, __ Fed. App'x __, 2011 WL 5025539, at *3 (11th Cir. Oct. 21, 2011) ("[W]hile approval of social security benefits may be considered, it is not conclusive on whether a claimant is also disabled under the terms of an ERISA plan."). The court finds that Drummond articulated reasonable grounds for distinguishing the favorable SSA determination, after due consideration of that determination.

### 4. Conflict of Interest is Not a Persuasive Factor in This Case

Finally, the court is unpersuaded by McCay's efforts to convince the court that a conflict of interest tainted Drummond's unfavorable benefits determination. Under *Glenn*, the court must weigh an alleged conflict of interest as merely "one factor" in determining whether an administrator abused its discretion. 554 U.S. at 115-17. Here, McCay sets out three reasons why Drummond's decision was tainted by self-interest. None has merit.

First, McCay argues that self-interest is evident in Drummond's "disregard for the SSA favorable decision." (Doc. 41 at 10). As discussed above, however, Drummond did not disregard the SSA's favorable decision. While McCay

acknowledges that "[t]he Social Security decision is not binding," he asserts that Drummond's "failure to address SSA award of disability benefits in a **meaningful** way is procedurally unreasonable and is an indication that the decision to terminate benefits was tainted by self interest." (*Id.* at 12 (emphasis in original)). The court disagrees, having established that Drummond did, in fact, address the favorable SSA determination, and carefully articulated its reasons for distinguishing it, in a meaningful way.

Next, McCay contends that conflict is evidenced by Drummond's "disregard of the opinion of the treating physician for the use of biased record reviewers." (*Id.* at 14). It is well-established in ERISA cases that "[n]o special weight is to be accorded the opinion of a treating physician." *Ray*, 2011 WL 5025539, at *3 (citing *Black & Decker Disability Plan v. Nord*, 123 S.Ct. 1965, 1970–72 (2003)). Moreover, the record clearly establishes that the Pension Committee did, in fact, review and rely upon the testimony of McCay's treating physicians, Dr. Cool and Dr. Berchuck, *as submitted by McCay*, in making its benefits determination. (See A.R. 0008). Moreover, no evidence in the record supports McCay's claim that the two independent record reviewers involved in this case, Dr. Powell and Dr. Romeo, were biased. The use of independent record reviewers is a practice recognized in the Eleventh Circuit as reasonable and does not automatically evince a conflict of

interest, as McCay seems to suggest. *See Doyle*, 542 F.3d at 1361-62 (noting that conflict was not a concern where the plan administrator "went beyond what the regulations require by employing an independent physician to review [the beneficiary's] medical records during its initial determination of her entitlement to benefits"). The court finds no evidence of conflict in Drummond's use of two independent medical reviewers; to the contrary, the use of two different reviewers factors against a showing of conflict.

Finally, McCay suggests conflict because "the Pension Committee never objectively reviewed and discussed the evidence." (Doc. 41 at 15). This contention also fails. After having carefully reviewed the entire administrative record, including the Committee's multiple communications with McCay and his counsel, the court finds that Drummond acknowledged, considered, *and* discussed the flood of information McCay's counsel has continued to pour into the record throughout the course of this litigation. By necessity, and in the interests of finality, the time has come to shut the valve and bring this litigation to a close.

In sum, the court finds no evidence of arbitrary and capricious conduct on behalf of Drummond's Pension Committee in adjudicating (and re-adjudicating, time and again) McCay's claim for disability pension benefits. To the contrary, its determination was supported by reasonable grounds, as explained above.

49

## V.      CONCLUSION

In sum, Drummond's Motion for Summary Judgment is due to be granted based on McCay's failure to exhaust his administrative remedies. Alternatively, summary judgment in favor of Drummond is appropriate under the arbitrary and capricious standard of review because its decision denying benefits upon remand was reasonable. Accordingly, under either reasoning, McCay's Motion for Judgment on Liability is due to be denied. The court will enter a Final Judgment Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 10th day of November, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

50